UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

RYAN LEE MOORE,                          )
                                         )
        Plaintiff,                       )        No. 5:25-CV-040-REW
                                         )
v.                                       )
                                         )
CHRISTOPHER MARTIN,                      )        OPINION & ORDER
                                         )
        Defendant.                       )

\*\*\*  \*\*\*  \*\*\*  \*\*\*

Plaintiff Ryan Lee Moore, an inmate previously confined at the Lee Adjustment Center (LAC), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983.  *See* DE 1 (Complaint). The Court, upon review pursuant to 28 U.S.C. §1915(e)(2) and §1915A, dismissed the claims against Defendants Gregory Hounshell, Johnny Peters, and Jordan Turner, along with the official capacity claims against Defendant Christopher Martin.  *See* DE 14 (Screening Order).  Thus, only the individual capacity claims against Defendant Martin remain.

## I.    BACKGROUND

Moore's Complaint stems primarily from events taking place on December 27, 2024, and January 1, 2025.  *See* DE 1 at 4-5, 7–9.  The events, as alleged by Moore:  Moore was in restricted housing.  On December 27, 2024, after Moore showered, Lee Adjustment Center (LAC) Officer Christopher Martin escorted Moore back to his cell.  *See id*. at 4; *see also* DE 56-1 at 43.  Moore asked for cleaning supplies to clean his cell, to which Martin responded, "Well I'll consider that if you suck my dick first."  *See* DE 1 at 4; *see also* DE 56-1 at 43.  Moore responded that he "don't need to clean anymore[.]"  *See* DE 1 at 4;  DE 56-1 at 47.  Two days later, Moore asked LAC

Sergeant Gregory Hounshell what to do about the incident. *See* DE 1 at 4. Moore recounted Hounshell's response:

> He laughed at me. Said he was mad at me because he got in trouble by her supervisors when an institutional tablet was found in my cell. Hounshell told me I "get what i deserve" and "people like me get no respect in places like this" he said he didn't care what happened to me and wasn't helping. He walked away laughing and mumbled something I couldn't hear. Later inmate Joshua Witten told me Hounshell call me a faggot as he walked away.

*See id.* On December 30, 2024, Moore filed an inmate grievance regarding his interactions with Martin and Hounshell. *See id.* at 4, 7; DE 1-1 (Inmate Grievance Information Form). On January 1, 2025, Martin again escorted Moore relative to the shower. *See* DE 1 at 4-5; DE 56-1 (Moore Deposition) at 69-70. Moore requested a different officer escort him, but Martin denied his request. *See* DE 1 at 5; DE 56-1 at 69-70. While escorting him to his cell, Martin stated, "[T]hanks for that little paper you wrote on me." *See* DE 1 at 5, 7–8; DE 56-1 at 71. During the interaction, Martin twisted Moore's wrist when placing handcuffs on him (at the shower door) and twisted his pinky finger when removing them (back at the cell). *See* DE 1 at 4–5, 7; DE 56-1 at 71. Moore also referenced early December 2024 instances when Martin leered or gestured at him, "creaping [sic]" him out. DE 1 at 5.

Moore claims that Defendant Martin violated the Eighth Amendment by inflicting cruel and unusual punishment on him. *See id.* at 5, 8. Moore seeks monetary and punitive damages. *See* DE 3 at 4.[1] Since then, Defendant Martin filed the instant motion for summary judgment. Plaintiff Moore has not filed a response within the period allotted by the Court. As a result, the motion is ripe for review. Judge Ingram expressly warned Moore that failure to respond to a dispositive motion can be grounds for granting that motion; this also is a fixture in the local rules. *See* DE 54; LR 7.1(c).

---

[1] The last page of Moore's complaint was errantly docketed with his fee motion.

2

## II.   LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(a), summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In determining whether a genuine dispute exists, the Court considers all facts and draws all inferences in the light most favorable to the non-moving party. *See Matsushita Elec. Indust. Co., Ltd. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Further, the court may not "weigh evidence [or] determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548 (1986). If the moving party satisfies its burden, the burden then shifts to the non-moving party to produce "specific facts" showing a "genuine issue" for trial. *Id.* However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Id.* at 2552.

A fact is "material" if the underlying substantive law identifies the fact as critical. *See Anderson*, 106 S. Ct. at 2510. Then, "[o]nly disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 2511 (citing *First Nat'l Bank of Az. v. Cities Servs. Co.*, 88 S. Ct. 1575, 1592 (1968)). Such evidence must be suitable for admission into evidence at trial. *See Salt Lick Bancorp v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006). Failure to respond has a cost. *See* Rule 56(e)(2)-(3).

### III. ANALYSIS

#### A. Procedural Compliance with the PLRA

Defendant argues that Moore's claims are barred by the Prison Litigation Reform Act ("PLRA"), because Moore (1) did not submit a grievance concerning the early December 2024 incidents and (2) he failed to cooperate with internal affairs investigator Johnny Peters and thus did not exhaust the 12/27 claim. *See* DE 55-1 at 24-25. The Prison Litigation Reform Act requires a prisoner to fully exhaust his administrative remedies before filing suit under § 1983, to assert a civil claim regarding the conditions of his confinement. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 127 S. Ct. 910, 918-19 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). An inmate's failure to exhaust his administrative remedies is an affirmative defense and must be pleaded and proved by a preponderance of the evidence. *See Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012).

"There is no federal exhaustion standard. A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution." *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017) (citing *Jones*, 127 S. Ct. at 922); *see also Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). Policy Number 14.6(II)(J) sets forth the Inmate Grievance Process. *See* DE 55-2 at 15. Importantly, Policy Number 14.6(II)(J)(1)(a)(10) states,

> If an inmate reports sexual abuse in a grievance, the Grievance Coordinator shall forward the grievance to the Warden and it shall be assigned to a designated, trained investigator for a full investigation. The Department of Corrections does not have administrative procedures to address offender grievances regarding sexual abuse through the offender grievance system. Refer to CPP 14.7, Sexual Abuse Prevention and Intervention Programs, regarding reports of sexual abuse.

*See id.* at 16. Here, Moore alleges that Martin "sexually violated" him. *See* DE 1-1 at 2. These allegations on their face appear to constitute allegations "regarding reports of sexual abuse," thus placing them within the ambit of CPP 14.7 rather than CPP 14.6. Defendant Martin does not

4

address CPP 14.7 and instead argues that the standard grievance policy (CPP 14.6) requires cooperation with the investigation.  *See* DE 55-1 at 25.

The PLRA requires that an inmate exhaust his *available* administrative remedies, *see* 42 U.S.C. § 1997e(a) (emphasis added), and certain circumstances can render a correctional institution's grievance process unavailable.  *See Coopwood v. Wayne Cnty., Mich.*, 74 F.4th 416, 422 (6th Cir. 2023).  The Supreme Court held that an administrative remedy is considered unavailable when no ordinary prisoner could discern or navigate the rules or "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *See Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016).

Because an inmate's failure to exhaust administrative remedies is an affirmative defense that the defendant has the burden to plead and prove by a preponderance of the evidence, "[a] district court should grant summary judgment only if a defendant establishes that there is no genuine dispute of material fact that the plaintiff failed to exhaust." *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (citation omitted).  Here, there are various ambiguities concerning Defendant's exhaustion arguments.  First, Defendant alleges Moore did not file a grievance concerning "the two early December 2024 alleged incidents, consequently they may not be the subject of this suit."  *See* DE 55-1 at 25.  The record is murky on when Moore first communicated regarding the earlier events.  Next, Defendant alleges Moore failed to exhaust because he did not cooperate with Investigator Peters.  *See id*. at 25.  However, it is unclear whether Moore's sexual abuse claims fall under CPP 14.6 or CPP 14.7; 14.7 seemingly applies.  He filed an ordinary grievance under CPP 14.6, *see* DE 1-1, but the document and his alleged verbal report may have been sufficient to trigger reporting and investigation requirements under CPP 14.7(II)(G). *See* DE 55-2 at 44-45; *see also* DE 14 (noting that Moore's verbal report may have been sufficient to

trigger CPP 14.7). Defendant Martin does not address whether Moore exhausted his sexual abuse claim under CPP 14.7. Put simply, neither of Defendant's arguments approaches satisfaction of his burden that there is no genuine dispute of material fact that Moore failed to exhaust. Accordingly, the Court declines to grant summary judgment on exhaustion grounds and proceeds to the merits.

## B. Defendant Martin Is Not Entitled to Automatic Relief on Account of Moore's Failure to Respond

Local Civil Rule 7.1(c) requires that a non-moving party "file a response within 21 days of service of [a] motion," and warns that "[f]ailure to timely respond to a motion may be grounds for granting the motion." Judge Ingram stressed this to Moore in DE 54. But when a non-moving party fails to respond in the Rule 56 context, the Court still must "examine the movant's motion for summary judgment to ensure that [it] has discharged" its initial burden. *Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 381 (6th Cir. 2011) (quoting *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991)). Thus, when a party fails to respond to a pending motion for summary judgment, the Court may not use that failure alone to justify granting the motion. *See id.* (citing *Carver*, 946 F.2d at 455).

The Court may, however, consider facts undisputed in light of a non-moving party's failure to respond and grant judgment *if* the movant is so entitled. *See* FED. R. CIV. P. 56(e)(2)–(3). The Court applies that rubric here. While the Court will review the merits of Martin's arguments, the deficiency in Plaintiff's non-response will result in construction of Martin's factual depictions—where they are properly supported—as undisputed for the purpose of deciding the present motion. *See, e.g.*, *N. Am. Bus. Ass'n, LLC v. United Merch. Servs. Club, LLC*, No. 6:22-CV-85, 2024 WL 1258626, at *2–3 (E.D. Ky. Mar. 26, 2024); *Hankins v. McDonough*, No. 2:22-CV-49, 2024 WL 6893291, at *7 (E.D. Ky. July 30, 2024).

6

"In order to preclude the granting of summary judgment, the non-moving party must show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino v. Brookfield Tp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992). While a pro se litigant is typically entitled to leniency, "the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage[.]" *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citing *Tucker v. Union Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788-89 (6th Cir. 2005)). While the Court will review the merits of Defendant Martin's summary judgment arguments, the deficiency in Moore's non-response results in the Court considering Martin's factual depictions, properly supported, as undisputed for purposes of the motion. The Court will not mine the record where a litigant has had but eschewed the chance to respond to a motion. Such is the case here.

### C.  Defendant Martin Is Entitled to Summary Judgment

Moore claims that he was sexually abused by Martin on December 27, 2024. *See* DE 1 at 4-5, 7–9. Moore alleges that after showering, LAC Officer Martin escorted Moore back to his cell. *See id*. at 4. Moore asked for cleaning supplies to clean his cell, to which Martin responded, "Well I'll consider that if you suck my dick first." *See id*. Moore responded that he "don't need to clean anymore[.]" *See id*.

The Eighth Amendment imposes a constitutional limitation on the power of government to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 101 S. Ct. 2392, 2398-99 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 101 S. Ct. at 2399). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." 101 S. Ct. at 2399; *see also Wilson v. Yaklich*,

7

148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 101 S. Ct. at 2400 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 112 S. Ct. 995, 1000 (1992) (quoting *Rhodes*, 101 S. Ct. at 2399). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

As to alleged sexual misconduct, "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment . . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Farmer v. Brennan*, 114 S. Ct. 1970, 1984-85 (1994) (discussing inmate abuse)); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (same); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (abuse by guards). However, in the context of claims against prison officials, the Sixth Circuit repeatedly has held that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *Ivey*, 832 F.2d 950, 954–55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* 76 F. App'x 24, 27 (6th Cir. 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim).

Moreover, the Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v.*

8

*Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Violett*, 76 F. App'x at 27 (an offer of sexual favors is not sufficient to state Eighth Amendment claim); *Johnson v. Ward,* No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him does not rise to the level of a constitutional violation.").

First, to the extent that Moore alleges verbal harassment, it is well-established that verbal abuse or general harassment by a prison guard does not constitute cruel and unusual punishment in violation of the Eighth Amendment. *See Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief."); *Johnson v. Unknown Dellatifa*, 357 F.3d at 546 (holding harassment and verbal abuse, while "shameful and utterly unprofessional . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Ivey*, 832 F.2d at 955; *see also DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) ("The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution."); *Jackson v. Hopkins Cnty. Det. Ctr.*, No. 4:12CV-P82-M, 2012 WL 5472024, at *6 (W.D. Ky. 2012) ("[W]hile reprehensible and not condoned, racial epithets and verbal abuse alone are insufficient to state a constitutional violation under § 1983."). Security footage, absent audio, from December 27, 2024, does not demonstrate Martin making any nonverbal gestures to Moore. *See* DE 59 at 7:26. Further, nothing in the footage indicates any misconduct by Martin that would impact the Court's analysis here. Thus, the alleged verbal comments or nonverbal

9

gesturing to Moore, of a sexual nature, cannot form the basis of a valid Eighth Amendment claim, certainly not on this record.

Moore also claims that Defendant Martin used excessive force when he twisted or tightly cuffed Moore's wrist and pinky finger while handling his handcuffs. The Eighth Amendment's ban on cruel and unusual punishments prohibits the "unnecessary and wanton infliction of pain'" on prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). A claim for excessive force under the Eighth Amendment includes both objective and subjective components. *See Johnson v. Sootsman*, 79 F.4th 608, 615-16 (6th Cir. 2023). The objective component analyzes whether the pain inflicted on the prisoner was "sufficiently serious." *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). Although infliction of a significant injury is not required, the use of force must be more than *de minimis. Sootsman*, 79 F.4th at 616. The Sixth Circuit has found that the absence of "any objectively verifiable injury" may be indicative of a *de minimis* use of force. *Id.* at 618 (citing *Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008)).

Here, Moore admits in his deposition that the only repercussion from the alleged contact was that his "finger was sore for a few days. [His] wrist was sore. Nothing lasting, nothing chronic. There's no ongoing, persistent issue from it, no." *See* DE 56-1 at 84. He concedes that he did not seek any medical attention. *See id*. Further, Defendant Martin disputes Moore's account and asserts in his sworn affidavit that he "transferred [Moore] from the shower to the cell" and "handcuff[ed] him through the flap on the shower door." *See* DE 55-3 (Martin Affidavit) at 3. Martin states that "Moore then walked to his cell without any contact from [Martin]." *See id*. Next, Martin asserts that "Moore entered the cell, and [Martin] closed the door and unlocked Moore's handcuffs through the flap on his cell door." *See id*.. Defendant Martin's account

10

includes no twisting or tightly cuffing of Moore's wrist at the shower or his pinky finger at the cell door.

Security camera footage of the incident corroborates Defendant Martin's account. At 7:23 p.m., Moore's hands are visible through the slot in the shower door. *See* DE 59 at 7:23:05. Over the course of approximately ten seconds, Martin places the handcuffs on Moore through the slot with no evident excessive roughness. *See id*. at 7:23:05-7:23:15. Moore walks across the hallway to his cell without any contact from Martin. *See id*. at 7:23:27. Martin shuts Moore's cell door, and at 7:23:49 p.m., begins to take off Moore's handcuffs through the slot in the cell door. Martin exhibits some trouble taking off one of Moore's handcuffs, but he is able to remove both cuffs by 7:24:03 p.m. The entire incident, from start to finish, is just over one minute.

In light of Moore's non-response, the Court accepts Martin's particular factual depictions—properly supported by the security footage and sworn affidavit—as undisputed. *See, e.g.*, *N. Am. Bus. Ass'n, LLC*, No. 6:22-CV-85, 2024 WL 1258626, at *2–3 (E.D. Ky. Mar. 26, 2024); *Hankins*, 2024 WL 6893291, at *7 (E.D. Ky. July 30, 2024). Moore conceded he had no verified injury from the encounter. *See* DE 56-1 at 84; *see also id*. at 78-79 ("[Martin] didn't do anything to injure me in any kind of way from going from the shower to the cell, no."). And, even accepting Moore's claim that Martin twisted his pinky and clamped his wrist, the soreness in his pinky and wrist that Moore experienced are clearly indicative of a *de minimis* use of force. *See Jones v. Johnson*, 2021 WL 1578185, at *2 (6th Cir. Apr. 21, 2021) (officers used *de minimis* force when they harmed a prisoner's wrists by handcuffing him too tightly); *Wilkins v .Gaddy*, 130 S. Ct. 1175, 1178 (2010) (a malevolent "'push or shove' that causes no discernible injury" falls short of the force required to violate the Eighth Amendment); *Leary*, 528 F.3d at 443 (an officer used *de minimis* force when he landed a "karate chop" on the "back" of a prisoner's "neck" but did not

11

harm the prisoner).  Given Moore's own admissions and Martin's rendering of the facts, there is no genuine dispute of material fact. He fails to form the basis for an excessive force claim under the Eighth Amendment.[2]

Moore does not respond to meet Martin's supported version.  At most, this is a case where Martin briefly squeezed a cuff, which caused only minimal and temporary discomfort.  The cuffing itself lasted no more than ten seconds, per the video.  The ambiguous pinky twist (which may have been a hand or may have been by the cuff removal itself), lasted one second and yielded no more than a superficial degree of harm.  The video shows that the entire cuffing and uncuffing lasted just over a minute, and the video does not support the view that Defendant grabbed and twisted Plaintiff's finger.   Martin's motion is well-supported, and Moore has not shown (and the record does not, on unilateral review show) any triable issue under the applicable standards.  Moore elected to forgo any chance to marshal the record or address the legal analysis.  The Court grants judgment to Martin.

### IV.    CONCLUSION

For the above-stated reasons, the Court **ORDERS** as follows:

1.  The Court **GRANTS** DE 55;

2.  The Court **DIRECTS** the Clerk to strike this matter from the active docket; and

3.  The Court will enter a separate Judgment contemporaneously with this Order.

This the 24th day of July, 2026.



Signed By:
Robert E. Wier
**United States District Judge**

---

[2] The Court also notes that to establish an excessive force claim arising from handcuffing, a plaintiff must establish (1) that he received a physical injury from the handcuffing; and (2) that the officers ignored the plaintiff's complaints that the handcuffs were too tight.  *See Lyons v. City of Xenia*, 417 F.3d 565, 575–76 (6th Cir. 2005).  Moore has failed to meet this burden.  Even if there was an initial squeezing of the cuffs, it stopped in the short transit, and the entire event in cuffs took one minute and yielded no residual harm.